UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRENTON DAVON FYE, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-350-CCB-SJF |
| CAPTAIN RIPPE, et al., | |
| Defendants. | |

## OPINION AND ORDER

Trenton Davon Fye, a prisoner without a lawyer, was ordered to show cause why the initial partial filing fee was not paid. (ECF 4.) After the order issued, the fee was received. (ECF 5.) The case will proceed to screening.

The court must screen the complaint (ECF 1) and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Fye is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Fye is an inmate in the Westville Control Unit ("WCU"), a long-term segregation unit. He claims that since October 2024, he has had problems getting access to cleaning supplies—such as a mop, broom, toilet scrubber, and cleaning chemicals—so that he can keep his cell clean. He cannot order items from the commissary and is limited in what personal items he can keep in his cell, and so he relies entirely on staff to provide him with cleaning supplies. At one point, his cell allegedly became so "filthy" that it caused him to become sick with a fever and vomiting. He claims to have personally complained about the lack of supplies to Captain Rippe (first name unknown), Warden Jason Smiley, Deputy Warden Gann (first name unknown), and Policy Coordinator Christina Stobaugh-Duncan on multiple occasions, but they allegedly ignored him and otherwise failed to take steps to get him the necessary supplies. He sues these defendants for $2 million in damages and seeks injunctive relief requiring that he be provided with cleaning supplies "every Tuesday and Thursday without having to submit requests." (ECF 1 at 21.)

In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the deprivation is serious enough that it amounts to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). The Eighth Amendment encompasses a "basic human need of rudimentary sanitation." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). On the subjective prong, the prisoner must allege the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. "Deliberate indifference occupies a space slightly below intent and

poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (citation omitted).

The Eighth Amendment does not entitle Fye to be provided cleaning supplies on a particular weekly schedule, nor does it require him to be provided with a "maximally safe" or clean environment. *Carroll v. DeTella*, 255 F.3d 470, 473 (7th Cir. 2001); *see also Pegues v. Rogers*, No. 3:07-CV-93-PPS, 2007 WL 951896, at *1 (N.D. Ind. Mar. 27, 2007) ("[C]onditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of Constitutional violations."). It entitles him to "rudimentary sanitation." *Gray*, 826 F.3d at 1005. The mere fact that he sometimes had to wait a few days for cleaning supplies or could not clean as often as he liked does not give rise to an Eighth Amendment claim. At the same time, Fye's complaint can be read to allege that he sometimes had to go weeks without any ability to clean his cell, and in one instance, his cell became so filthy that it allegedly caused him to become ill. Giving him the inferences to which he is entitled at this stage, he satisfies the first prong of the inquiry.

On the second prong, he claims that he asked Captain Rippe, Deputy Warden Gann, Warden Smiley, and Policy Coordinator Stobaugh-Duncan for help remedying these conditions multiple times, but they allegedly ignored him. At this point it is not clear exactly which requests came at a time when his cell was so filthy as to pose a health risk, but this issue is better resolved at a later stage when the underlying facts can be developed. Fye has alleged enough to proceed further against these defendants

3

under the Eighth Amendment. *See Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Fye also brings an Eighth Amendment claim against Captain Rippe for humiliating him. Specifically, he claims Captain Rippe once told him to clean up his cell or prison staff would "clean it up for [him]." Other inmates heard this comment and laughed at Fye. Rude comments and other types of verbal harassment (assuming Captain Rippe's comment could be characterized as such) do not violate the Eighth Amendment. *See Dobbey v. Ill. Dep't of Correction*, 574 F.3d 443, 445 (7th Cir. 2009) ("[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment."); *see also Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) ("Relationships between prisoners and prison staff are not always marked by genteel language and good manners."). Verbal harassment may be actionable if it involves "a credible threat to kill, or to inflict any other physical injury." *Dobbey*, 574 F.3d at 446. The comment Fye describes regarding cleaning his cell does not fall into that category. He will not be permitted to pursue this claim.

He also asserts a claim against Grievance Specialist Shannon Smith stemming from grievances he filed about the lack of supplies. In his view, had she handled the grievances better, this issue could have been resolved. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011)*; see also Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). There is

4

nothing to indicate Grievance Specialist Smith was responsible for handing out cleaning supplies to inmates in WCU. The mere fact that she processed grievances about the alleged failings of other prison staff does not make her liable for a constitutional violation they committed. *Daniel*, 833 F.3d at 736; *Burks*, 555 F.3d at 595.

Fye may be complaining about the fact that Grievance Specialist Smith designated him as a grievance abuser because of multiple grievances he filed about the conditions in WCU, including the lack of regular access to cleaning supplies. Because of the designation, he was unable to submit grievances for a 30-day period beginning in February 2024. In his view, this made the grievance process unavailable to him. If Fye's exhaustion of administrative remedies becomes an issue at a later stage, he is free to argue that the grievance process was unavailable to him because Grievance Specialist Smith mishandled his grievances or barred him from submitting grievances. *See Woodford v. Ngo*, 548 U.S. 81, 102 (2006). However, his allegations do not support an independent constitutional claim against her.

Finally, Fye claims that the conditions in his cell impeded the exercise of his religion in violation of the First Amendment. Because he is a Muslim, he prostrates himself on the floor to pray, and he asserts that the dirty conditions bothered him spiritually. "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal citation and quotation marks omitted). The Religious Land Use and Institutionalized Persons Act ("RLUIPA") offers broader protections by preventing the state from placing a substantial burden on any aspect of one's religious practice, even if

5

it is not central to the religion.[1] *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016) (citation and internal quotation marks omitted). "De minimis burdens" on the free exercise of religion are not actionable. *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999).

As Fye describes it, no one intentionally denied him the right to pray or stopped him from praying on the floor. At most, the defendants "dropped the ball" in providing him cleaning supplies on certain occasions. *See Hambright v. Kemper*, 705 F. App'x 461, 463 (7th Cir. 2017) (no First Amendment liability where prison official simply "dropped the ball" in failing to prepare religious meals); *Collins v. Aramark Food Servs.*, No. 3:22-CV-257-DRL-MGG, 2022 WL 1469374, at *1 (N.D. Ind. May 10, 2022) (inmate did not state First Amendment claim where he was inadvertently served foods in violation of his religious tenets). It is evident that Fye continued to pray on the floor throughout this period, and at most he describes a de minimis burden on his religious practice. *Rapier*, 172 F.3d at 1006 n.4. He will not be permitted to pursue this claim.

For these reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against Captain Rippe (first name unknown), Warden Jason Smiley, Deputy Warden Gann (first name unknown), and Policy Coordinator Christina Stobaugh-Duncan in their personal capacity for monetary

---

[1] RLUIPA only authorizes injunctive relief against state officials and not monetary damages. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

damages for deliberate indifference to the dirty conditions in his cell in the Westville Control Unit in violation of the Eighth Amendment;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** Shannon Smith as a defendant;

(4) **DIRECTS** the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Captain Rippe (first name unknown), Warden Jason Smiley, Deputy Warden Gann (first name unknown), and Policy Coordinator Christina Stobaugh-Duncan at the Indiana Department of Correction and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(5) **ORDERS** the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(6) **ORDERS** Captain Rippe (first name unknown), Warden Jason Smiley, Deputy Warden Gann (first name unknown), and Policy Coordinator Christina Stobaugh-Duncan to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 2, 2025.

                                           /s/ *Cristal C. Brisco*
                                           CRISTAL C. BRISCO, JUDGE
                                           UNITED STATES DISTRICT COURT